## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AMY C.,[1]

       Plaintiff,

                                   **Case No. 1:23-cv-22939**

   v.                               **Magistrate Judge Norah McCann King**

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

       Defendant.

### <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Amy C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 28, 2020, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since July 30, 2019.[3] R. 85, 108, 237–38. The application was denied initially and upon reconsideration. R. 138–43, 145–56. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed.R.Civ.P. 25(d).

[3] Plaintiff later amended her alleged disability onset date to May 7, 2020. R. 18, 52–53.

administrative law judge ("ALJ"). R. 157–58. ALJ Michael Stacchini held a hearing on June 1,

2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

46–84. In a decision dated July 26, 2022, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from May 7, 2020, Plaintiff's amended alleged

disability onset date, through the date of that decision. R. 18–39. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

October 10, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On December 7, 2023, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 4.[4] On February 16, 2024, the case was reassigned to the undersigned. ECF

No. 9. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025. R. 21. Plaintiff was 37 years old on May 7, 2020, her amended alleged disability onset date. R. 37. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lung cancer, osteoarthritis of the hip, fibromyalgia, asthma, obesity, osteoarthritis of the hand, osteoarthritis of the shoulder, bipolar disorder, anxiety, posttraumatic stress disorder, and personality disorder. *Id*. The ALJ also found that Plaintiff's vocal chord polyp was not severe. R. 21–22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–37. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a personal care aide. R. 36–37.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g*., jobs as a marker, an assembler, and a document preparer– existed in the national economy and could be performed by Plaintiff with this RFC. R. 37–38. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 7, 2020, her amended alleged disability onset date, through the date of the decision. R. 38–39.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or,

alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Konstantinos Tsoubris, Ph.D.

On October 5, 2020, Konstantinos Tsoubris, Ph.D., conducted a consultative psychological examination of Plaintiff, R. 654–58, and reported Plaintiff's current functioning as follows:

> She has difficulty falling asleep. Her appetite fluctuates. She has lost 25 to 30 lb. Depressive symptoms include dysphoric mood, fatigue, excessive crying, guilt, hopelessness, lost of usual interest, worthlessness, diminished sense of pleasure, social withdrawal, and concentration difficulties. No suicidal or homicidal ideation or intent in the last 30 days. Anxiety-related symptoms include excessive worry, avoidance of social settings, restlessness, easily fatigued, difficulty concentrating. She has a history of trauma. She has flashbacks, nightmares, avoidance, intrusive thoughts, detachment from others, panic attacks. She has palpitations, nausea, sweating, breathing difficulties, choking sensation, manic symptoms, slated self-esteem, psychomotor agitation, excessive involvement in pleasurable activity, flight of ideas, increased goal-directed behavior, distractibility, elevated expansive mood.

R. 654–55. Upon mental status examination, Dr. Tsoubris characterized Plaintiff as cooperative but with "poor" social skills and with the additional findings:

> APPEARANCE: Appearance was same as age. Mode of dress was casual. Personal hygiene and grooming satisfactory. Posture tense. Motor behavior normal. Eye contact fair.

> SPEECH: Fluent. Quality of voice raspy. Expressive language adequate. Receptive language adequate.

> THOUGHT PROCESSES: Coherent and gool directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting.

> AFFECT: Labile

MOOD: The claimant reported feeling nervous.

SENSORIUM: Clear.

ORIENTATION: Orientation to person, place, and time.

ATTENTION AND CONCENTRATION: Attention and concentration were impaired. She was able to count. She could not do simple calculations, serial 7s, or serial 3.

RECENT AND REMOTE MEMORY SKILLS: Recent and remote memory skills were impaired. She remembered 3 out of 3 objects immediately 2 out of 3 objects after a delay; 7 digits in a digits forward task and 3 digits in a digits backward task.

COGNITIVE FUNCTIONING: Cognitive functioning was average. General fund of information was appropriate to experience.

INSIGHT: Poor.

JUDGMENT: Poor.

R. 655–56. Dr. Tsoubris characterized these results as "consistent with the claimant's vocational and educational history." R. 656. Dr. Tsoubris summarized Plaintiff's daily activities and social and family relationships:

She can dress, bathe, and groom herself. She needs help with her pants sometimes when her thumbs hurt. She does not do laundry. She shops. She cooks and prepares food. She does not manage money. She does some cleaning. She does not drive. She does not take public transportation. Socialization: None. Family relationships: Horrible, all ruined. None of the kids talk to her. Hobbies and interests: None. She spends her day crying.

*Id*. Dr. Tsoubris provided the following medical source statement:

To understand, remember, or apply simple direction and instructions, moderate limitation. To understand, remember, or apply complex directions and instructions, marked limitation. Use reason and judgment to make work related decisions, marked limitation. Interact adequately with supervisors, coworkers, and the public, marked limitation. Sustain concentration and perform a task at a consistent pace, marked limitation. Sustain an ordinary routine and regular attendance at work, marked limitation. Regulate emotions, control behavior, and maintain well-being, marked limitation. Maintain personal hygiene and appropriate attire, mild limitation. Be aware of normal hazards and take appropriate precautions, moderate

9

limitation.

The results of the psychiatric problems, the claimant's ability examination appear to be consistent and this may significantly interfere to function on a daily basis.

R. 656–57 [sic]. Dr. Tsoubris made the follow diagnoses:

Personality disorder, not otherwise specified.
Bipolar I disorder.
Generalized anxiety disorder with panic attacks.
Posttraumatic stress disorder.

Medical diagnosis reported by the claimant:
Arthritis in hips.
Tennis elbow.
Fibromyalgia.
Asthma.

R. 657. Dr. Tsoubris recommended continued psychological and psychiatric treatment. *Id*.

Plaintiff's prognosis was "[g]uarded, given the severity of her symptoms." *Id*.

**B.      Robert Williams, LCSWR, and Susan Baez, N.P.**

On October 15, 2020, Robert Williams, LCSWR, completed—and Susan Baez, N.P., co-signed—a five-page, check-the-box, and fill-in-the-blank form entitled, "Mental Health Questionnaire." R. 662–66 ("the Williams/Baez opinion"). Social Worker Williams had treated Plaintiff on a weekly basis since May 2020, R. 662, and diagnosed anxiety disorder, unspecified, and bipolar disorder, current episode depressed, moderate. *Id*. Plaintiff's prescribed medications were Cymbalta (20 mg) and Lamictal (75 mg). *Id*. Plaintiff did not have a low IQ, learning disability, or reduced intellectual functioning and could manage benefits in her own best interest. *Id.* According to Mr. Williams, Plaintiff's symptoms would cause her to be absent from work 2 or more days per month and she would be off task 20% or more of the day. *Id*. Stress exacerbated her symptoms but she could handle minimal stress. *Id*. Plaintiff had no/mild

limitation in her activities of daily living but was markedly[5] limited in maintaining social

functioning and in maintaining concentration, persistence, or pace. R. 663. According to Mr.

Williams, Plaintiff had a medically documented history of a chronic organic mental,

schizophrenic, etc., or affective disorder of at least 2 years' duration, which has caused more

than a minimal limitation of ability to perform any basic work activity; she also had a residual

disease process that has resulted in such marginal adjustment that even a minimal increase in

mental demands or change in the environment would cause her to decompensate. *Id*. Asked if

Plaintiff had experienced episodes of decompensation within one year, Mr. Williams responded:

"9/05 about 10 minutes almost catatonic. Describes panic attacks almost daily triggered by

driving, confrontation, crowds. . . ." *Id*. Plaintiff's impairment had lasted or was expected to last

at least 12 months. *Id*. Mr. Williams checked boxes indicating that Plaintiff had a limited, but

satisfactory,[6] ability to remember work-like procedures; understand, remember, and carry out

very short and simple instructions; maintain regular attendance and be punctual within customary

tolerances; sustain an ordinary routine without special supervision; make simple work-related

decisions; ask simple questions or request assistance; and understand, remember, and carry out

---

[5] The form defines "marked" as "more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function *independently, appropriately, effectively, and on a sustained basis*." R. 663 (emphasis in original).

[6] Mr. Williams used the scale defined in the form:

- Limited but satisfactory means your patient has noticeable difficulty no more than 10% of the workday or work week
- Seriously limited means your patient has noticeable difficulty from 11 to 20% of the workday or work week
- Unable to meet competitive standards means your patient has noticeable difficulty 21 to 40% of the workday or work week
- No useful ability to function means your patient cannot perform this activity on a regular, reliable, and sustained schedule in a regular work setting[.]

R. 664.

detailed instructions. R. 664. Mr. Williams also checked boxes reflecting that Plaintiff was seriously limited in her ability to maintain attention for two-hour segments; work in coordination with or proximity to others without being unduly distracted; be aware of normal hazards and take appropriate precautions; and interact appropriately with the general public. *Id*. Plaintiff was unable to meet competitive standards in her ability to accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and set realistic goals or making plans independently of others. *Id*. Plaintiff had no useful ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms; deal with normal work stress; or deal with stress of semiskilled or skilled work. *Id.* Mr. Williams identified the following signs and symptoms: blunt, flat, or inappropriate affect; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; pathological dependence, passivity, or aggression; persistent disturbances of mood or affect; generalized persistent anxiety; feelings of guilt or worthlessness; anhedonia; decreased energy; change in personality; manic syndrome; deeply ingrained maladaptive patterns of behavior; intense and unstable interpersonal relationships and impulsive and damaging behavior; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average at least once a week; emotional lability; sleep disturbance; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; emotional withdrawal or isolation; impairment in impulse control; oddities of thought, perception, speech, or behavior; and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by

either or both extremes). R. 665. The form utilized by Mr. Williams assumed that these limitations were current only and, when asked if he had sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations and on what date his opined limitations were first present, Mr. Williams responded that Plaintiff's "symptoms have probably been with her for years[.]" R. 666. Mr. Williams affirmed that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation. *Id.*

## V.    DISCUSSION

Plaintiff challenges the ALJ's evaluation of the opinions of Dr. Tsoubris and Mr. Williams/Nurse Baez. *Plaintiff's Brief*, ECF No. 10, pp. 8–19. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

---

[7] As previously noted, Plaintiff's claim was filed on July 28, 2020.

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The regulation further requires an ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

### A.    The Williams/Baez Opinion

 In this case, at step four of the sequential evaluation process, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except limited to occasional ramps and stairs, but no climbing ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl and perform frequent reaching and occasional overhead reaching; and frequent handling and fingering. She is to avoid concentrated exposure to atmospheric conditions, and avoid unprotected heights and hazardous machinery. She can understand, remember, and carry out simple routine tasks with regular breaks at 2-hour intervals, and decision making and changes in work setting only related to

simple routine tasks, and can occasionally interact with the general public, co-workers, and supervisors.

R. 25. In making this determination, the ALJ found, *inter alia*, the Williams/Baez opinion to be

unpersuasive, as follows:

> I am cognizant of the mental health questionnaire completed by Robert Williams, LCSW-R (signed October 10, 2020) and co-signed on October 15, 2020, by Susan Baez, NP, as a supervising practitioner. They noted an anxiety disorder (unspecified) and bipolar disorder (current episode depressed, moderate) with Cymbalta 20 mg and Lamictal 75 mg prescribed. They advised that the claimant would likely be absent from work 2+ days per month and off task 20% or more. They opined that the claimant has none/mild limits in activities of daily and marked limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. They assessed "Limited but satisfactory" abilities in the following: Remember work like procedures; understand and remember and carry out very short and simple instructions; maintain regular attendance and be punctual within customary usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and understand, remember, and carry out detailed instructions. They assessed "Seriously Limited" in maintaining attention for a two-hour segment; work in coordination with or proximity to others without being unduly distracted; be aware of normal hazards and take appropriate precautions; and interact appropriately with the general public. They assessed "Unable to Meet Competitive Standards" in accepting instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting and set realistic goals to make plans independently of others. They assessed "No useful Ability to Function" to complete a workday and workweek; deal with normal work stress; and deal with stress of semiskilled or skilled work. They advised that the "symptoms have probably been with her for years." (Exhibit 10F). However, *I find these opinions unpersuasive and inconsistent with their own treatment notes that consistently showed no overt serious psychiatric symptoms and a good response to medications and psychotherapy. Their opinions are also contradictory to the claimant's activities of daily living, which tend to show a greater residual functional capacity than alleged.*

R. 33–34 (emphasis added). The Court finds no error with the ALJ's consideration in this regard.

For example, the ALJ considered Plaintiff's "mental health treatment with no evidence of any

overt serious psychiatric symptoms[,]" R. 31, including treatment notes of Mr. Williams and

Nurse Baez:

Specifically, progress notes from Spectrum Behavioral Health [*i.e.,* from Mr. Williams and Nurse Baez] cover the periods of May 7, 2020, to August 24, 2020; September 3, 2020, to February 15, 2021, and additional records to June 3, 2022. *Examinations show some chronic symptoms but no overt serious symptoms nor evidence that the symptoms were so severe that she required psychiatric impatient care.* As examples, on May 16, 2020, the provider Susan Baez, NP, advised that the claimant was friendly, attentive, communicative, casually groomed, and anxious. Her speech was normal in rate, volume and articulation and was coherent and spontaneous. Her language skills were intact. She was depressed (moderately) but affect was appropriate, full range and congruent with mood. Her associations were intact and logical. There was no hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Cognitive functioning and fund of knowledge were intact and age appropriate. *Short- and long-term memory were intact as is ability to abstract and do arithmetic calculations.* This claimant was fully oriented. Her vocabulary and fund of knowledge indicated cognitive functioning in the normal range. Insight into problems and judgment were fair. *There were signs of anxiety but no signs of hyperactive or attentional difficulties. She was cooperative and attentive with no gross behavioral abnormalities.* (Exhibit 4F, page 10). A progress note on June 8, 2020 (signed by Robert Williams, LCSW-R, noted an unspecified anxiety disorder and bipolar disorder, but *the claimant was relaxed and composed and "will be going back to work next week*." (Id. at page 16). On July 30, 2020, the claimant was oriented times three, insight and judgment were fair, and *memory was intact*. She was anxious but "did respond to grounding and breathing and body scanning calming herself during the session." (Id. at page 17). An examination on July 31, 2020, the claimant's *behavior "has been stable and uneventful and medication compliance is good.*" It was noted that there was "no history of disorder of muscle strength or tone, joint problems, or disturbances of gait or station." (Id. at page 19). On August 3, 2020, the claimant reported that she was "*planning a barbecue this evening*" and "kids played in the pool in the back yard." (Id. at page 22). On August 10, 2020, NP Baez noted upon mental status examination, "no gross abnormalities." Her dress and grooming were appropriate. The claimant was friendly and communicative, and she appeared to be her stated age. Her mood was euthymic with no signs of depression or manic process. Her speech was normal in rate, volume, and articulation and language skills are intact. She denied suicidal or self- injurious ideas or impulses are denied, as are assaultive or homicidal ideas or intentions. She denied hallucinations and delusions and there is no apparent thought disorder. Associations were intact, thinking generally logical, and thought content was appropriate. Her cognitive functioning, based on vocabulary and fund of knowledge, was intact and age appropriate, and she is fully oriented. *There were no signs of anxiety. There were no signs of attentional or hyperactive difficulties*. Insight and Judgment appeared intact. (Id. at page 25). On August 24, 2020, the examination revealed "*no apparent serious mental status abnormalities*." She was normal in appearance with age-appropriate dress and grooming. Neither depression nor mood elevation was evident Her speech was normal in rate, volume, and articulation and her language skills were intact. (Id. at page 29).

A September 10, 2020, progress note advised that the *claimant had a camping trip despite complaints of depression*. (Exhibit 13F, page 3). A progress note on September 14, 2020, noted "*no gross abnormalities*." (Id. at page 4). On September 28, 2020, she "evidenced humor in describing a situation with her cousin and aunt." (Id. at page 7). During an October 26, 2020, session, the claimant reported that she "allowed a friend to stay in their home for a week." The claimant's mood was "mostly good and her affect is congruent." (Id. at page 14). On December 14, 2020, the claimant reported feeling embarrassed over Thanksgiving when at the last minute her daughter said she was not coming. She said she broke dishes but advised that *she does yoga and meditation* (Id. at page 25). On December 14, 2020, the claimant again reported that she was "*starting yoga and meditation*." (Id. at page 26). Examinations in January and February 2021 also showed no overt serious symptoms with reports on February 15, 2021, that she was "improving working on her anger *doing yoga* learning more about herself." (Id. at pages 27-39).

I also note 129 pages of records from Spectrum Mental Health up to June 3, 2022, but again *no mention of any overt serious symptoms*. The claimant reported on March 8, 2021, that she "went to the movie theater." (Exhibit 22F, page 78). On March 22, 2021, the claimant advised that a new kitchen is being installed and "she is on a ladder doing cleaning." (Id. at page 80). The claimant's mood was "good" during a March 29, 2021 mental health session. (Id. at page 81). The claimant reported less anhedonia and feeling less sad during an Aril 26, 2021 session. (Id. at page 85). On June 4, 2021, the claimant *reported less acting out behavior, heart related symptoms are less frequent and "lessening of the feelings of apprehension*." (Id. at page 91). On July 7, 2021, NP Baez noted "Behavior has been stable and uneventful and medication compliance is good." (Id. at page 96). On September 16, 2021, Jacqueline Gallo, LCSW-R, advised that the claimant "*continues to do well*." (Id. at page 102). On February 10, 2022, the claimant reported that CPS is still involved from the summer, but she has followed all mandates. (Id. at page 108). Upon mental status examination on February 18, 2022, the claimant was talkative but with regular rate, tone, and volume. Her thought processes were goal directed and logical. She was alert, oriented times three, and cognition was intact. She exhibited average intelligence and good impulse control. (Id. at page 113). *Thus, mental status examinations and progress notes consistently showed no overt serious symptoms and at times, a good array of daily activities.*

R. 31–33 (emphasis added). The ALJ also considered Plaintiff's testimony that she lives with her boyfriend and two children (ages 13 and 14) and attends yearly "parent teacher conferences as her son has an IEP. She said there were some difficulties, but she was able to advocate his needs." R. 27. She also had social relationships, which helped her with transportation and shopping. *Id*. ("She walks or gets rides from family members and friends. She said she has one

18

friend. She calls, texts, and goes to the grocery store. She said her friend drives her to the store

and that she will push the cart[,]" but she also testified that "she goes to the store with a family

member only (usually her son)"). She also walks to stores, goes to restaurants, and does yoga and

meditation. *Id*. ("She said she walks 3 blocks to a convenience store and a dollar general. . . . She

also goes to restaurants. She said she was ordered to do Yoga by her doctors and 'has gotten into

that' but since she moved, she has not gone as much. She said she got out of shape. She said she

does meditation exercises over the phone. She does not take walks except for going the three

blocks to the store."). Plaintiff also performed household chores. *Id*. ("She does laundry at the

house. She said she prepares spaghetti, frozen chicken nuggets, frozen dinners, mac and cheese,

hot dogs and can do simple meals. She does light cleaning such as wiping counters, cleans dishes

and sweeping."). Plaintiff watches television and movies and uses the internet. *Id*. ("She said for

enjoyment, she watches television, movies and occasionally goes to a movie but not in years. . . .

She watches television including General Hospital and Rachel Ray and a 'lot of news' and a 'lot

of Netflix' at night. She goes on the internet but does not play video games."). The ALJ also

noted that "[s]he said her main issues is [sic] her physical conditions." *Id*. In short, the ALJ's

detailed discussion of this evidence reflecting no "overt serious psychiatric symptoms" and a

variety of daily activities provides substantial support for his finding that the extreme

Williams/Baez opinion was not supported by these providers' own treatment notes and was

inconsistent with other record evidence, including mental examination findings and Plaintiff's

own testimony. *Id*.; *see also Maxwell v. Kijakazi*, No. CV 22-4465, 2023 WL 3674335, at *4

(E.D. Pa. May 25, 2023) (finding that the ALJ's decision, including rejection of opinion

evidence, was "free from legal error" where, *inter alia*, "the ALJ explained that Dr. Cespon's

opinions were not well-supported by his own treatment notes, because he noted only a small

19

number of psychiatric abnormalities during mental status examinations, found Plaintiff grossly normal on multiple occasions, and noted her to be doing well on multiple occasions"); *L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony contradicted such an opinion); *Newcomb v. Kijakazi*, No. 3:20-CV-01552, 2022 WL 178820, at *9 (M.D. Pa. Jan. 18, 2022) (affirming ALJ's denial of benefits where, *inter alia*, the ALJ considered an opinion in conjunction with the claimant's "activities of daily living, including caring for his young son, managing his own personal care, shopping, mowing, cooking, cleaning, and driving, the ALJ found that '[w]hile none of these activities alone [are] dispositive, taken together they suggest that [the claimant] is capable of performing work activity on a sustained and continuous basis within the above parameters'") (citations omitted); *Leonard v. Kijakazi*, No. CV 20-849, 2021 WL 3021977, at *3 (W.D. Pa. July 16, 2021) ("I find that the ALJ appropriately assessed the medical opinions in general, and Dr. Brinkley's medical opinion in particular, in light of these standards. Specifically, the ALJ explained that Dr. Brinkley's opinion was inconsistent with his own treatment notes which indicated that Leonard was doing better on Risperdal and that her orientation and memory were intact.").

Plaintiff nevertheless challenges the ALJ's evaluation of this opinion. *Plaintiff's Brief*, ECF No. 10, pp. 8–14. First, Plaintiff argues that the ALJ erred in finding that the opinion was inconsistent with treatment notes, insisting that "the medical records from these providers did show significant psychiatric symptoms" and contending that the ALJ "mischaracterized and cherry-picked" record evidence to support his rejection of this opinion. *Id*. at 11–13 (citations omitted). However, review of Plaintiff's record citations—in addition to the ALJ's summary of

the treatment notes as detailed above—makes clear that the ALJ did not in fact mischaracterize or cherry pick the treatment notes. For example, Plaintiff points to her own subjective complaints in records dated May, 7, 2020; May 15, 2020; June 18, 2020; July 30, 2020; and August 24, 2020, when she reported chronic daily depression with accompanying symptoms, weekly breakdowns, meltdowns, and mini panic attacks. *Plaintiff's Brief*, ECF No. 10, pp. 11–12 (citing R. 599, 606, 614–15, 630). However, the mere memorialization of a claimant's subjective complaints in a medical record will not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]"). Notably, the ALJ discounted Plaintiff's subjective complaints, R. 28, 35–36,[8] a determination that Plaintiff does not challenge.

---

[8] The ALJ discounted Plaintiff's subjective statements, explaining as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> In evaluating the claimant's symptoms, including pain, under the factors described in 20 CFR 404.1529(c)(3) and Social Security Ruling 16-3p, there are several reasons why the claimant's allegations of the nature, intensity, persistence, limiting effects of those symptoms are not consistent with the medical signs, laboratory findings and/or other evidence of record which limit the capacity for work-related activities.

> First, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She cooks, shops in stores for groceries, watches television, does work around the house, cares for her children, does laundry, uses the internet, walks to a convenience store and a Dollar General store, and enjoys yoga.

> Second, although the claimant has received treatment for the allegedly disabling impairments, that treatment has included medication management. When

Moreover, Plaintiff herself makes no reference to those portions of these treatment notes that support the ALJ's consideration, thus undermining her assertion that the ALJ mischaracterized or cherry-picked the evidence. *See* R. 602 (reflecting that on May 7, 2020, "[t]here are no signs of hyperactive or attentional difficulties. Ms. [C.'s] behavior in the session was cooperative and attentive with no gross behavioral abnormalities" and that "[s]hort- and long-term memory are intact" and that "[t]his patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair"), 608 (reflecting on May 14, 2020, that Plaintiff's "[s]hort- and long-term memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented" and that "[t]here are no signs of hyperactive or attentional difficulties. Ms. [C.'s] behavior in the session was cooperative and attentive with no gross behavioral abnormalities"), 614 (reflecting that on June 18, 2020, Plaintiff "sounds relaxed and composed" and "will be going back to work next week"), 617 (reflecting that on July 31, 2020, it was noted that Plaintiff's "[b]ehavior has been stable and uneventful and medication compliance is good. She describes no side effects and none are in evidence" and that the examination revealed "no apparent serious mental status abnormalities" and that "[t]here are no signs of cognitive

---

considering the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, it would not prevent the claimant from engaging in the above residual functional capacity.

Third, the claimant's symptoms and related limitations are not consistent with the evidence of record. For example, the record shows a lack of reduced joint motion, muscle spasm, sensory deficit, and motor disruption that may result from or be associated with the symptom of pain and testimony regarding functional limitations. The mental health treatment reports fail to support any marked limits in functioning as evidenced by the consistently stable progress notes as outlined and discussed in Exhibits 4F, 13F and 22F.

R. 35–36.

difficulty, based on vocabulary and fund of knowledge. Memory is intact for recent and remote events and the patient is oriented to time, place, and person. There are no apparent signs of anxiety. A normal attention span is in evidence and she exhibits no signs of hyperactivity. Insight and judgment appear intact"), 627 (reflecting that on August 24, 2020, Plaintiff "describes no depressive symptoms[,]" "describes no symptoms of mania[,]" "[b]ehavior has been stable and uneventful and medication compliance is good. She describes no side effects and none are in evidence" and examination revealed "no apparent serious mental status abnormalities" including that "[t]here are no signs of cognitive difficulty, based on vocabulary and fund of knowledge. Memory is intact for recent and remote events" and "[t]here are no apparent signs of anxiety. A normal attention span is in evidence and she exhibits no signs of hyperactivity. Insight and judgment appear intact").

Plaintiff also argued that the ALJ further "mischaracterized and cherry-picked" from evidence September 14, 2020, September 28, 2020, and March 15, 2021, pointing to evidence that she believes supports significant psychiatric symptoms. *Plaintiff's Brief*, ECF No. 10, pp. 12–13 (highlighting that she reported some improvement with Lamictal but continued to report anxiety symptoms and difficulty with concentration on September 14, 2020; that her thoughts were somewhat distorted and her insight and judgment were fair on September 28, 2020; and that on March 15, 2021, she reported "rough days" and being in bed for two days with "low thoughts") (citing R. 32, 695, 698, 1222). This argument does not undermine the ALJ's analysis of this evidence. As previously explained, the ALJ expressly acknowledged that "[e]xaminations show some chronic symptoms but no overt serious symptoms nor evidence that the symptoms were so severe that she required psychiatric inpatient care." R. 31. In other words, the ALJ specifically recognized that Plaintiff continued to experience some symptoms of her mental

impairments, but concluded that those symptoms and impairments did not render her disabled. *Id*. Moreover, to the extent that treatment records contained contrary evidence on certain dates, the ALJ had the duty to resolve that conflict. *See Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Notably, this Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). At bottom, Plaintiff has not shown that the ALJ mischaracterized the record or otherwise erred in considering the treatment records when discounting the Williams/Baez opinion.

Plaintiff also challenges the ALJ's statement that this opinion was inconsistent with Plaintiff's activities of daily living; Mr. Williams and Nurse Baez, Plaintiff notes, actually found that Plaintiff had no, or only mild, limitations in her activities of daily living. *Plaintiff's Brief*, ECF No. 10, p. 13 (citing R. 34 ("Their opinions are also contradictory to the claimant's activities of daily living, which tend to show a greater residual functional capacity than alleged."), 663 (finding "None/Mild" restriction of activities of daily living)). However, even assuming the ALJ erred in this regard, this was but one factor that the ALJ considered when discounting the Williams/Baez opinion. R. 33–34.

Plaintiff goes on to complain that the ALJ failed to compare the Williams/Baez opinion with the opinion of Dr. Tsoubris. *Plaintiff's Brief*, ECF No. 10, pp. 13–14. According to

24

Plaintiff, these opinions were consistent with each other as they both found marked limitations in several areas of functioning. *Id*. (citing R. 657). Plaintiff argues that the ALJ's failure in this regard is not harmless because

> these opinions assessed marked limitations in at least two Paragraph B domains (socializing with others and in concentration, persistence, and pace[)]. Had these opinions been properly and fairly evaluated, these opinions would have established the two *marked* Paragraph B criteria limitations which would have satisfied the elements of Listing 12.04.

*Id*. at 14 (emphasis in original).

Plaintiff's argument is not well taken. As detailed above, substantial evidence supported the ALJ's discounting of the Williams/Baez opinion, including the opinion of marked limitations in, *inter alia*, concentration, persistence, or maintaining pace. R. 31–34, 663. That functional area "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E3. In discounting the Williams/Baez opinion, the ALJ specifically considered, *inter alia*, that examinations revealed in May 2020 that Plaintiff's "[s]hort- and long-term memory were intact as is [the] ability to abstract and do arithmetic calculations[,]" "no signs of hyperactive or attentional difficulties[,]" and that she was "attentive with no gross behavioral abnormalities"; in July 2020, her memory was intact; in August 2020, there were "no signs of attentional or hyperactive difficulties" and "no apparent serious mental status abnormalities." R. 31–32.  *cf*. R. 27 ("She goes on the internet . . . . She watches television including General Hospital and Rachel Ray and a 'lot of news' and a 'lot of Netflix' at night."). *See also Orr v. Comm'r Soc. Sec*., 805 F. App'x 85, 89 (3d Cir. 2020) ("Substantial evidence supports that finding [moderate difficulties in maintaining concentration, persistence or pace] because [the claimant] spent time online searching for auto parts; he read magazines; he watched a lot of politics and history on television; and he got six to seven hours of

sleep a night, despite being awakened by discomfort in his leg."); *Parks v. Comm'r of Soc. Sec.*,
401 F. App'x 651, 655 (3d Cir. 2010) (agreeing with the ALJ who found that the ability to read,
watch television, and play video games "required a degree of concentration, persistence, or pace"
and holding "that when all of the testimony is considered together, substantial evidence supports
the ALJ's finding of moderate limitations in concentration, persistence, or pace"); *Hollinger v.
Kijakazi*, No. 4:20-CV-1133, 2022 WL 677283, at *14 (M.D. Pa. Mar. 7, 2022) (finding that the
ALJ's rejection of opinion regarding social limitations and ability to adapt to changes "appears to
be supported by some evidence" where, *inter alia*, the claimant "was attending weekly yoga
classes"); *Millner v. Comm'r of Soc. Sec.*, No. 2:18-CV-13473, 2019 WL 3369781, at *6 (D.N.J.
July 25, 2019) ("Plaintiff reported completing many daily tasks that require some concentration,
persistence and pace, such as watching television and reading for pleasure."). Moreover, for the
reasons detailed below, the ALJ appropriately discounted Dr. Tsoubris' opinion. The ALJ's
failure to expressly compare that opinion with the Williams/Baez opinion will not serve as a
basis to remand this action.

Accordingly, for all these reasons, the ALJ's finding that the Williams/Baez opinion was
unpersuasive enjoys substantial support in the record.

### B.    Opinion of Dr. Tsoubris

At step four of the sequential evaluation, the ALJ also considered — and rejected — the
opinion of Dr. Tsoubris:

> Moreover, also unpersuasive is the psychological consultative examination by
> Konstantinos Tsoubris, Ph.D., who on October 5, 2020, examined the claimant at
> the request of the State agency in connection with the filing of her disability
> application. Dr. Tsoubris diagnosed a personality disorder, NOS; bipolar disorder;
> generalized anxiety disorder with panic attacks, posttraumatic stress disorder and
> unspecified disruptive impulse controlled conduct disorder. Dr. Tsoubris opined
> that the claimant has moderate limitations in the ability to understand, remember or
> apply simple directions and instruction. Dr. Tsoubris also wrote: "To understand,

remember or apply complex directions and instructions, marked limitation. Use reason and judgment to make work-related decisions, marked limitation. Interact adequately with supervisors, coworkers, and the public, marked limitation. Sustain concentration and perform a task at a consistent pace, marked limitation. Sustain an ordinary routine and regular attendance at work, marked limitation. Regulate emotions, control behavior, and maintain well-being, marked limitation. Maintain personal hygiene and appropriate attire, mild limitation. Be aware of normal hazards and take appropriate precautions, moderate limitation. The results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." *However, Dr. Tsoubris's opinion as it relates to the marked limitations seems to be based on the claimant's subjective complaints and not from any specific clinical examination findings.* For instance, during psychiatric testing, the claimant remembered 3 out of 3 objects immediately; 2 out of 3 objects after a delay; 7 digits forward and 3 digits backwards. She was oriented times three, and sensorium was clear although she was nervous. Her insight and judgment were poor although all examinations by the claimant's own provider's (as discussed earlier) show insight and judgment to be at least fair. The claimant was also described as cooperative and motor behavior normal with fair eye contact. The claimant's speech was fluent and expressive and receptive language skills were adequate. Her thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. During the examination, the claimant even acknowledged that she shops, cooks, and prepares food, and does cleaning. Thus, *Dr. Tsoubris's opinion is not supported by his own examination and is inconsistent with claimant's course of treatment and the claimant's activities of daily living.* (Exhibit 8F).

R. 34 (emphasis added). The Court finds no error with the ALJ's consideration of this opinion; the ALJ properly highlighted the inconsistency between Dr. Tsoubris' examination findings and his opinion of marked limitations. For example, the psychologist's testing revealed that Plaintiff remembered 3 out of 3 objects immediately; 2 out of 3 objects after a delay; 7 digits forward and 3 digits backwards; normal cooperative and motor behavior with fair eye contact; and coherent and goal directed thought processes with no evidence of hallucinations, delusions, or paranoia. His opinions that Plaintiff's recent and remote memory skills were "impaired" and that Plaintiff had a marked limitation in her ability to, *inter alia*, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being were therefore inconsistent with his own

findings. *Id.*; R. 656–57. The ALJ therefore reasonably concluded that Dr. Tsoubris' opinions were based on Plaintiff's subjective complaints rather than on this psychologist's objective examination findings. *See also Clarke v. Comm'r of Soc. Sec.*, No. CV 23-1484, 2024 WL 4252054, at *1 (W.D. Pa. Sept. 20, 2024) ("The ALJ also adequately analyzed the supportability of this opinion, pointing out that Ms. Cohen did not support her opined limitations by reliance on any objective findings."); *Blackwell v. O'Malley*, No. CV 23-319, 2024 WL 1214199, at *1 (W.D. Pa. Mar. 21, 2024) ("This [discussion that the opined limitations "appeared to be largely based" on the plaintiff's own statements] was a sufficient supportability analysis, as the ALJ is allowed to discount a doctor's opinion when it is based on Plaintiff's statements and Plaintiff's complaints are properly discounted. . . . Here, this was proper as the ALJ had previously found that Plaintiff's subjective complaints lacked credibility.") (citing *Morris v. Barnhart*, 78 Fed. Appx. 820, 824–25 (3d Cir. 2003)); *Statkiewicz v. Kijakazi*, No. CV 21-4316, 2022 WL 807421, at *10 (D.N.J. Mar. 16, 2022) ("[W]e find that the ALJ considered the supportability factor [when finding a medical opinion unpersuasive] because he determined that Dr. Madison's opinion was largely based on [the claimant's] self-reported limitations."); *cf. Hatton*, 131 F. App'x at 879.

Moreover, and as addressed above, the ALJ also reasonably found that Dr. Tsoubris' opinion that Plaintiff was markedly limited in several functional areas was inconsistent with Plaintiff's treatment notes, which showed no overt serious psychiatric symptoms, and with her various substantial daily activities, which reflected an ability to concentrate (watching television, including the news, and using the internet) and to socialize (communicating with a friend and shopping with her in stores; going to yoga; hosting a barbecue; and permitting a friend to stay at her house for a week), as previously detailed. R. 31–34.

Plaintiff challenges the ALJ's consideration of this opinion, *Plaintiff's Brief*, ECF No. 10, pp. 14–19, first insisting that Dr. Tsoubris relied on objective findings and not merely on Plaintiff's subjective complaints when he found that Plaintiff's attention and concentration were impaired because she could not do simple calculations, serial 7s or serial 3s. *Id*. at 17 (citing R. 656). However, as previously discussed, the ALJ found that this opinion was inconsistent with Plaintiff's treatment notes and her activities of daily living, which included, *inter alia*, examinations that reflected, among other things, friendly, attentive, and communicative presentation; cooperative and attentive affect or demeanor with no gross behavioral abnormalities; intact short- and long-term memory; an ability to abstract and perform arithmetic calculations; an attentive presentation with no gross behavioral abnormalities; no sign of hyperactive or attentional difficulties; no apparent serious mental status abnormalities; and a variety of daily activities reflecting concentration and social interaction (watching television, including the news; using the internet; communicating with a friend for transportation and walking/shopping; participating in yoga; hosting a barbecue; permitting a friend spend a week at her house). R. 27, 31–34. In other words, the ALJ properly found that Dr. Tsoubris' opinion of marked limitations was unsupported by his own examination findings and was inconsistent with the record evidence. Moreover, to the extent that Plaintiff points to Dr. Tsoubris' opinion that Plaintiff's attention and concentration were impaired based on the examination findings, this Court has already explained that the ALJ, as the trier of fact, has the duty to resolve any conflict in the medical evidence and that this Court must uphold the ALJ's decision, where the decision is supported by substantial evidence in the record, even if contrary evidence exists that would justify the opposite conclusion. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff next complains that the ALJ improperly discounted Dr. Tsoubris' opinion of poor judgment and insight on the ground that Plaintiff's treating providers assessed her insight and judgment to be at least fair. *Plaintiff's Brief*, ECF No. 10, p. 18 (citing R. 34). Plaintiff insists that the terms "poor" and "fair" are both abnormal findings and the ALJ did not explain how "at least fair" insight and judgment is inconsistent with Dr. Tsoubris' opinion of "poor" insight and judgment. *Id*. The Court is not persuaded that this issue requires remand. As a preliminary matter, Plaintiff has not persuaded this Court that these findings ("poor" and "at least fair") are, in fact, consistent. *Plaintiff's Brief*, ECF No. 10, p. 18. Moreover, Plaintiff has not explained how any purported error in the ALJ's consideration of this finding results in harmful error or different functional limitations, particularly where Dr. Tsoubris opined that Plaintiff was, *inter alia*, only moderately limited in her ability to understand, remember, or apply simple directions and instructions. R. 656. The RFC limited Plaintiff to, among other things, "understand[ing], remember[ing], and carry[ing] out simple routine tasks with regular breaks at 2-hour intervals, and decision making and changes in work setting only related to simple routine tasks[.]" R. 25; *cf. Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208–14 (3d Cir. 2019) (stating that "[a] limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions'" and finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation) (citations omitted). In short, Plaintiff has not shown that the ALJ erred in his consideration of Dr. Tsoubris' insight/judgment findings or that any such purported error warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's

determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Finally, Plaintiff complains that the ALJ improperly failed to explain why Plaintiff's activities of daily living "justified rejecting Dr. Tsoubris' medical opinions related to Plaintiff's inability to interact with others in a work setting or Plaintiff's inability to concentrate, persist and maintain pace in the work setting" where even Plaintiff's treating sources assessed no or only mild limitations in the Plaintiff's ability to perform activities of daily living; therefore, Plaintiff argues, "the fact that the Plaintiff was able to shop for groceries, cook and clean does not appear to be dispositive in this case." *Plaintiff's Brief*, ECF No. 10, p. 18. However, this Court has already explained that Plaintiff's activities—such as watching television, including the news; using the internet; communicating with a friend and shopping with her in stores; participating in yoga; hosting a barbecue; and permitting a friend to stay at her house for a week—reflect greater abilities to interact with others and to concentrate; they are therefore inconsistent with the more marked limitations in the opinions of Dr. Tsoubris, Mr. Williams, and Nurse Baez. R. 31–34; *Orr*, 805 F. App'x at 89; *Hollinger*, 2022 WL 677283, at *14; *Parks*, 401 F. App'x at 655; *Millner*, 2019 WL 3369781, at *6. Accordingly, based on this record, the Court cannot find that the ALJ's consideration of Dr. Tsoubris' opinion requires remand in this case.

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  November 20, 2025                    *s/Norah McCann King*
                                   _____
                                   NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE

31